IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Janice Marie Cross, | ) | C/A NO. 3:11-1010-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION AND ORDER** |
| v. | ) | **CONSOLIDATING ACTIONS** |
| | ) | **AND DISMISSING FOR LACK OF** |
| Deutsche Bank Trust Company Americas | ) | **SUBJECT MATTER JURISDICTION** |
| as Trustee for RALI2007QS8, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| John David Cross, | ) | |
| | ) | |
| Intervenor. | ) | |
| _____ | ) | |
| | | |
| Janice Marie Cross, | ) | C/A NO. 3:11-1118-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Deutsche Bank Trust Company Americas | ) | |
| as Trustee for RALI2007QS8, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| John David Cross, | ) | |
| | ) | |
| Intervenor. | ) | |
| _____ | ) | |

Plaintiff's claims in these two related actions arise out of a single state-court proceeding. Specifically, Plaintiff challenges various decisions and actions of the Master-in-Equity for Lexington County, South Carolina. Those decisions and actions related to foreclosure proceedings on Plaintiff's home. Plaintiff argues that the resulting state-court judgment, documents relied on in that

proceeding, and other related transfers are "*ipso facto* void." *See, e.g.,* C.A. No. 11-cv-1010-CMC ("*Cross I*"), Dkt. No. 20 at 4, 5, 10; C.A. No. 11-cv-1118-CMC ("*Cross II*"), Dkt. No. 20 at 4, 5, 10.

These matters are now before the court for review of Reports and Recommendations ("Reports") entered separately in the two related cases. *See Cross I*, Dkt. No. 14 (entered June 20, 2011); *Cross II*, Dkt. No. 15 (entered July 1, 2011). Both Reports recommend that the cases be dismissed without prejudice and without issuance and service of process due to an absence of subject matter jurisdiction. The Report in *Cross II* also recommends that various other motions be denied.

Plaintiff has filed two distinct documents (both filed contemporaneously in both cases), which the court has fully considered as objections to the Reports in both cases. *Cross I*, Dkt. Nos. 18, 20; *Cross II*, Dkt. Nos. 19, 20.[1] The first of these documents was filed after the Report in *Cross I* and directly addresses that Report. It also includes a motion for consolidation of the two actions. In this document, Plaintiff argues, among other things, that the court has subject matter jurisdiction because her challenges to the state-court judgment (and its resulting effects) are based on violations of federal law. Plaintiff also includes a "Petition for Intervention," asking that "her husband John David Cross, real party in interest," be allowed to intervene "to assist her in prosecuting this case." *Id.* at 7-8.

The later-filed document, titled "Plaintiff's Motion in Opposition to Magistrate's 'Report and Recommendation,'" was filed on July 15, 2011, after entry of the Report in *Cross II*. In this document, Plaintiff makes additional, though similar, arguments to those contained in the document

---

[1] Both of these documents were filed on July 1, 2011. The court, therefore, assumes Plaintiff was not in receipt of the Report in *Cross II* at the time she prepared this document. The subsequently filed document (Dkt. No. 20 in both actions) was, however, filed well after filing of the Report in *Cross II* and addresses the same.

2

filed on July 1, 2011. *Cross I*, Dkt. No. 20; *Cross II*, Dkt. No. 20. The court has, in any event, considered all arguments in both sets of documents in its review of the Report.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. 28 U.S.C. § 636(b)(1).

**BACKGROUND**

*Cross I.* The verified complaint in *Cross I* was filed on April 28, 2011. Through *Cross I*, Plaintiff sought a temporary restraining order ("TRO") and other injunctive relief barring a planned May 2, 2011 eviction. *See Cross I,* Dkt. No. 1 at 2, 24. In support of the requested relief, Plaintiff alleged that the underlying foreclosure was defective or void for a variety of reasons including federal constitutional and statutory violations. *E.g.,* id. at 17-22 (summarizing state court proceedings); *id*. at 24 (conclusion).[2] She asserts that jurisdiction exists because "a federal question or questions are involved" and relies expressly on Federal Rules of Civil Procedure 65(b)(1)(A) (injunctive "relief for irreparable harm"), 60(b)(3) ("relief from a judgment or order where there is

---

[2] In her conclusion, Plaintiff summarizes her position by stating: (1) absent injunctive relief, she will suffer irreparable harm "by the forcible expulsion . . . from my personal residence"; (2) the state Master-in-Equity "has arbitrarily and capriciously denied me my Constitutional rights to due process of law thereby affording me no adequate remedy or recourse under the laws of [South Carolina]"; and (3) the state Master-in-Equity "has capriciously and willfully issued and deliverd an unlawful 'master's deed' to a purported purchaser of my residential property." *Id.* at 24.

fraud in-fact"), 60(b)(4) ("relief from a judgment when the judgment is void").  *Id.* at 22-23 ("Jurisdiction" section).

*Cross II*.  *Cross II* was filed on May 9, 2011, and sought relief from the same state-court judgment pursuant to various subparts of Rule 60 of the Federal Rules of Civil Procedure.  *Cross II*, Dkt. No. 1 at 1.  Although this document was captioned as a "Motion to vacate a void judgment[,]" it was filed as a new complaint.[3]  Again, Plaintiff asserted that the foreclosure proceeding was void due to various violations of Plaintiff's federal constitutional and statutory rights and sought to vacate the state-court judgment.  *Id.* at 2-4 (stating claim as "Wrongful foreclosure–fraud–fraud on the court– perjured testimony–counterfeit documents" followed by a list of federal statutes, rules and references to various amendments to the United States Constitution); *id.* at 5 (listing relief sought as including "Vacate a void judgment" and asking court to "schedule a fair hearing–it will be the first fair hearing in this matter . . . sanction the parties [and] review for possible judicial misconduct").

**State Court Proceeding**.  The underlying state court foreclosure proceeding became final in February 2011, when the time to appeal the judgment of foreclosure expired.  As explained in this court's order denying Plaintiff's motion for a TRO in *Cross I*:

> On November 16, 2009, Defendant initiated a foreclosure action in the Lexington County Court of Common Pleas against Plaintiff.  The case was referred to the Lexington County, South Carolina Master-in-Equity for resolution.  A review of the

---

[3] In addition to the caption, various statements in the *Cross II* Complaint suggest it was intended as a second motion in *Cross I*.  *See id.* (responding to inquiry whether Plaintiff had filed other lawsuits dealing with the same facts as follows: "No – although I filed a TRO (C/A No. 3:11-1010-CMC-PJG) but not a lawsuit in my understanding.").  On inquiry from the undersigned, the case manager stated that Plaintiff was offered the opportunity to file what became *Cross II* within her original action but declined the opportunity to do so.  In any event, Plaintiff's decision to file two actions has no impact on the decision here.

4

> public records index reveals that this matter was closed on January 21, 2011, by a judgment of foreclosure. The last filing posted in the public records index is a "Master's Statement of Receipts & Disbursements," filed April 14, 2011.

*Cross I*, Dkt. No. 7 at 2 (also noting that information was obtained from the state court's public records as it was not provided by Plaintiff).[4] Thus, the state-court judgment became final no later than February 22, 2011, when the time to appeal that judgment ran without Plaintiff having filed a notice of appeal. *See* S.C. Rule App. Proc. 203(b)(1), (4) (setting thirty-day deadline for filing notice of appeal).

## DISCUSSION

**Consolidation.** Before addressing the Reports, the court considers Plaintiff's motion to consolidate the two actions. Not only do these two actions relate to the same underlying state-court action, but it appears Plaintiff may, despite filing *Cross II* as a second action, have intended both to serve as different motions in the same action. *Supra* n.3. The motion to consolidate is, therefore, granted.

**Intervention.** The court declines Plaintiff's request to allow her husband to intervene as Plaintiff has failed to establish that her husband is a real party in interest in this action.[5]

**Hearing**. In one or more of her submissions, Plaintiff has requested a hearing. The court denies this request. For reasons explained below, it is clear from Plaintiff's written submissions that

---

[4] Plaintiff has not challenged any aspect of this statement of facts.

[5] Plaintiff argues that her husband should be allowed to intervene as "[t]hey are one in the eyes of the true God, and they are also one in the eyes of this state, and should not be 'put asunder' by this Honorable Court[.]" *Cross II*, Dkt. No. 19 at 7. She also argues that her husband resides with her and "has real sweat equity in the home." *Id.* None of these arguments persuades the court that Plaintiff's husband has a *legal* interest which supports joining him as a party in this action. Even if Mr. Cross were joined in the action, it would be to no avail as the matter is dismissed without prejudice for reasons addressed below.

this court lacks subject matter jurisdiction over these actions, whether the actions are viewed individually or in their consolidated form. It follows that a hearing would not aid the court in reaching a decision.

**Jurisdiction.** In light of Plaintiff's objections to the Reports, the court has conducted a *de novo* review of both Reports with respect to the recommendation that the actions (now a single consolidated action) be dismissed for lack of subject matter jurisdiction. Having done so, the court concludes that both the rationale and recommendations in the Reports are correct.

Contrary to Plaintiff's suggestion, under the circumstances of this case (these cases), it does not matter whether the parties are diverse or whether Plaintiff's challenges are founded on alleged violations of federal law. This is because the finding that the court lacks subject matter jurisdiction is based on the *Rooker-Feldman* doctrine which precludes this court from reviewing state court decisions and actions such as those challenged here. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).[6]

In a unanimous decision issued in 2005, the Court summarized *Rooker* as follows:

> In [*Rooker*], the parties defeated in state court turned to a Federal District Court for relief. Alleging that the adverse state-court judgment was rendered in contravention of the Constitution, they asked the federal court to declare it "null and void." . . . This Court noted preliminarily that the state court had acted within its jurisdiction. . . . If the state-court decision was wrong, the Court explained, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." . . . Federal district courts, the *Rooker* Court recognized, lacked the requisite appellate authority, for their jurisdiction was "strictly original." . . . Among federal courts, the *Rooker* Court clarified, Congress had empowered only this Court to exercise appellate authority "to reverse or modify"

---

[6] As explained in this court's order denying Plaintiff's motion for a temporary restraining order, the relief sought would also be precluded if the state court action was not final, albeit for a different reason. *See Cross I*, Dkt. No. 7 at 2-3 (addressing Anti-Injunction Act, 28 U.S.C. § 2283).

>     a state-court judgment. . . . Accordingly, the Court affirmed a decree dismissing the
>     suit for lack of jurisdiction.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284-85 (2005) (internal citations omitted).[7]

As the Fourth Circuit more recently explained in a similar case:

> [Plaintiff's] complaint asks that lower federal courts in effect exercise appellate review over numerous state administrative and judicial decisions, and under our system of federalism, the lower federal courts lack jurisdiction to sit as appellate tribunals over state administrative and judicial decisionmakers, absent explicit statutory authorization. *See Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462; *Exxon Mobil*, [544 U.S. at 284] (holding that lower federal courts lack jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court

---

[7] In her later-filed objection (Dkt. No 20), Plaintiff relies on a single sentence from *Exxon Mobil* to argue that *Rooker-Feldman* does not bar jurisdiction in this action. *See* Dkt. No. 20 at 15 (quoting the following statement "Since *Feldman*, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction."). While the statement is quoted correctly, it is out-of-context a it is merely predicate to addressing a "conflict among the Courts of Appeals over the scope of the *Rooker-Feldman* doctrine." *Exxon Mobil*, 544 U.S. at 287, 291. That doctrine was summarized by the Court as follows:

> *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising *subject-matter jurisdiction* in an action it would otherwise be empowered to adjudicate under a congressional grant of authority . . . In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, . . . the District Courts in *Rooker* and *Feldman* lacked *subject-matter jurisdiction*.

*Id.* at 291-92 (internal citations omitted) (emphasis added). Ultimately, the Court held that the *Rooker-Feldman* doctrine did not bar jurisdiction in *Exxon Mobil* because the federal action was initiated while the state-court action was still pending. *Id.* at 292. The court, therefore, analyzed the matter under preclusion doctrines, distinguishing *Rooker-Feldman* because the plaintiff "ha[d] not repaired to federal court to undo the [state-court] judgment." *Id.* at 293 (noting "Preclusion, of course, is not a jurisdictional matter.").

7

> judgments rendered before the district court proceedings commenced and inviting
> district court review and rejection of those judgments"). Parties aggrieved by state
> administrative and judicial decisions must pursue review in state appellate tribunals,
> with the ultimate opportunity to petition the Supreme Court of the United States for
> review. *See Exxon Mobil Corp.*, 544 U.S. at 291–92.

*Rousseau v. Howard County, Md.*, No. 10-1016, 2011 WL 1542556 (4th Cir. Apr. 21, 2011).

As explained in *Exxon Mobil* and more recent decisions, the *Rooker-Feldman* doctrine "applies only when the following conditions are met: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the state-court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" *Willner v. Frey*, 243 F. App. 744, 746 (4th Cir. 2007) (summarizing and quoting *Exxon Mobil*, 544 U.S. at 284).[8]

Each of these requirements is clearly satisfied in this action: (1) Plaintiff received an adverse decision on the state-court foreclosure; (2) the injuries of which she complains flow from this adverse judgment; (3) the foreclosure proceeding became final in February 2011, prior to when this action was commenced; and (4) Plaintiff's allegations seek review of the state court's actions and

---

[8] In *Willner*, the Fourth Circuit found each of these requirements satisfied with respect to a foreclosure proceeding. The court rejected the Willners' argument that their claim against the clerk of the county court was not barred because it was "'based on a violation of their constitutional rights . . . and the consequence of the state court judgment-not the state court judgment itself.'" *Id.* (quoting appellant's brief).

8

rejection of its ultimate decision.[9] The court, therefore, finds that it lacks subject matter jurisdiction over these matters under the *Rooker-Feldman* doctrine.

To the extent Plaintiff relies on Rule 60 of the Federal Rules of Civil Procedure her claims are also ill founded.[10] Rule 60 of the Federal Rules of Civil Procedure, like Rule 60 of the South Carolina Rules of Civil Procedure, provides various grounds on which the respective court may modify its *own* judgments. Nothing in either the state or federal version of the rule vests one court (even within the same system) with authority to review another court's decisions. Thus, nothing in either the state or federal version of Rule 60 authorizes a federal court to review a state-court decision.[11]

---

[9] Through her most recent filings, Plaintiff concedes she is "not now actively pursuing injunctive relief." *Cross I*, Dkt. No. 18 at 3; Dkt. No. 20 at 10 (stating "she no longer actively seeks injunctive relief"). Thus, her only remaining challenge is to the state court judgment and earlier related actions by the state's judicial decisionmaker (Master-in-Equity). As expressed in her most recent filing, Plaintiff is "ask[ing] this court to **vacate** a judgment that was *ipso facto* void when it was made." Dkt. No. 20 in both actions (emphasis in original).

[10] The "complaint" in *Cross I* seeks injunctive relief including a temporary restraining order. As noted above, however, Plaintiff has now abandoned pursuit of such relief. This leaves Plaintiff with the relief sought through *Cross II*, which expressly seeks relief under various subsections of Fed. R. Civ. P. 60.

[11] In her July 1, 2011 memorandum, Plaintiff asserts that "Federal Rule 60 and state Rule 60 are not diverse, but are the same[.]" *Cross I*, Dkt. No. 18 at 3. She then argues that various subparts of Rule 60 empower this court to "set aside and to vacate the void judgment" of the state court. This argument, in turn, rests on a misapplication of *Rooker*, which Plaintiff argues establishes that the state court "lacked jurisdiction *ab initio* of the subject matter" causing the state court judgment to be "*ipso facto* void." *Id.* at 5. Contrary to Plaintiff's argument, nothing in *Rooker* imposes any limitations on a *state* court's jurisdiction. Neither does Rule 60 of the Federal Rules of Civil Procedure authorize federal interference with a state-court judgment.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to intervene is denied, her motion to consolidate is granted, and the consolidated action is dismissed without prejudice for lack of subject matter jurisdiction. As to the dismissal, the court adopts and incorporates the reasoning in the Report and Recommendations as supplemented above. All other pending motions are mooted by the dismissal.[12]

IT IS SO ORDERED.

          s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 19, 2011

---

[12] In *Cross II*, Plaintiff filed a "Motion to Strike a 'Motion to Dismiss' under Rule 12f of the Federal Rules of Civil Procedure [and] in the Alternative a Motion for Summary Judgment." *Cross II*, Dkt. No. 13 ("Motion to Strike"). The Motion to Strike refers to a motion to dismiss which was apparently served on Plaintiff and, at one point, was mailed to the court, but was never properly filed by or on behalf of Defendant. Thus, the referenced motion to dismiss is not in the record leaving the court with nothing to strike. Neither has the content of the mailed-in motion been considered. In any event, the court's *sua sponte* dismissal of the now-consolidated action under the *Rooker-Feldman* doctrine renders all other motions moot.

10